In re William E. JENKINS, Debtor.

Lena Mae JENKINS, Plaintiff,

v.

William E. JENKINS, Defendant.

Bankruptcy No. 87–06253F.
Adv. No. 88–0457F.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 21, 1988.

Gary M. Gusoff, Edward J. Morris, P.C., Philadelphia, Pa., for plaintiff, Lena Mae Jenkins.

Oscar N. Gaskins, Philadelphia, Pa., for the debtor/defendant, William E. Jenkins.

John J. Judge, Philadelphia, Pa., Trustee.

OPINION

BRUCE I. FOX, Bankruptcy Judge:

Lena Mae Jenkins has brought an adversary proceeding, pursuant to 11 U.S.C. § 523(a)(5) and Bankr.Rule 4007, seeking a determination that a prepetition debt owed to her by her former husband, the debtor, is nondischargeable. At trial, the parties stipulated to those facts they believed relevant to this dispute. Posttrial memoranda

were then filed, making this matter ripe for decision.[1]

### I.

The parties have stipulated to the following:

In November 1979, the plaintiff began a divorce action against the debtor which culminated in an order dated June 21, 1985. The order is quite brief and states in full:

### "ORDER AND DECREE"

AND NOW, to wit, this 21st day of June, 1985, upon consideration of the Master's Report, the exceptions filed thereto and the Briefs and Arguments of Counsel, it is hereby ORDERED AND DECREED that the parties hereto, LENA MAE JENKINS and WILLIAM E. JENKINS, are hereby divorced from the bonds of matrimony, and the said parties shall severally be at liberty to marry again in like manner as if they had never been married.

Further, it is hereby ORDERED AND DECREED that the parties' marital residence, 5516 Boyer Street, Phila., PA. and furnishings therein be awarded to Plaintiff; that the Defendant pay Plaintiff the sum of $35,477.56 at the rate of $250 per month as Plaintiff's equitable share of the marital property, i.e., Defendant's pension fund less credit for Plaintiff's pension fund and one half the value of the marital residence; that the 1980 Buick LaSabre automobile, and the parties' stereo be awarded to Defendant.

Further, that Defendant is ORDERED to pay Alimony to Plaintiff in the sum of $250.00 per month until the date of his retirement.

(Stipulation, Exhibit A).

When this decree was entered both parties were employed, both were 52 years old, and both were in good health. Also in June 1985, there were no minor children of the marriage.

The parties further stipulated that if the plaintiff were called to testify, she would state that it was her belief that the divorce decree limited her to $250.00 in monthly alimony payments because of the award of monthly equitable distribution payments. Were the debtor called to testify, he would state that it was his belief that his equitable distribution payments were to commence at the time he received, or was eligible to receive, his retirement pension.

It is agreed that the debtor failed to comply with the provisions of the June 1985 order. As a result, he was held in contempt by orders dated March 26, 1987 and November 9, 1987.

Finally, without objection, the debtor introduced into evidence Exhibit D–1. Unhappy with the June 21, 1985 order, the debtor sought to challenge it, but waited beyond the expiration of the appeal period to file his request. Exhibit D–1 represents a true copy of his petition for leave to appeal *nunc pro tunc*, a request which was denied by the Pennsylvania Superior Court. This petition included the Master's Report, to which reference was made in the June 21, 1985 order.

In accordance with Pennsylvania law, 23 P.S. § 304, the state court had appointed a Master to make recommendations concerning alimony, divorce, and equitable distribution of marital property in the Jenkins divorce dispute. In making his recommendation, the Master held a hearing and evaluated the facts in accordance with the factors enumerated in 23 P.S. § 401(d) concerning equitable distribution, as well as the factors set forth in 23 P.S. § 501(b) regarding alimony.

As to alimony, the Master concluded (Report, at 7) that an award of alimony was appropriate. He determined that the plaintiff lacked sufficient resources to support herself at the modest level which she had obtained during her marriage. He further stated that the wife's employment income, both at present and in the future, would be insufficient to meet her needs. Therefore, he recommended an alimony award of $300.00 per month (Report, at 14).

Similarly, he concluded that equitable distribution of marital property was re-

---

1. This opinion constitutes the requisite findings and conclusions mandated by Bankr.Rule 7052.

quired. Taking into account certain statutory factors such as the length of the marriage (§ 401(d)(1)), the wife's lack of opportunity for a significant salary increase (§ 401(d)(5)), her contribution as a homemaker (§ 401(d)(7)), and her marital standard of living (§ 401(d)(9)), the Master recommended that the plaintiff receive one-half the value of the marital property. He determined that the marital property included the debtor's future pension benefits which he then valued. And, after suggesting that one party or the other obtain possession of the home, the automobiles, personal property, and other items, and after deducting for the disposition of such items, the Report concluded that the plaintiff should receive one-half the balance, which was computed at $35,477.56. The Master suggested that this sum be paid by the debtor in monthly installments of $300.00 until paid in full and that payments should begin when the debtor retires. Moreover, once the equitable distribution payments were to begin, the alimony payments were to stop. The Report, at 14, ended with this summary:

> NOTE: It is intended that the plaintiff receive continuous payments of $300.00 per month Alimony upon the granting of the divorce decree, which shall end at the time defendant retires, and the same amount, $300.00 per month shall continue as plaintiff's part of the Equitable Distribution of the retirement proceeds, until the $35,477.56 is paid off.

Apparently, the debtor filed exceptions to these recommendations and obtained a review in the Court of Common Pleas of Philadelphia County. A comparison of the June 21, 1985 order with the Master's recommendations discloses that the report was not accepted in whole. The state court reduced the monthly payments of both alimony and equitable distribution to $250.00 cash; moreover, it ordered the equitable distribution payments to begin immediately, not at retirement. Until the debtor's retirement, the plaintiff was to receive $500.00 per month; at retirement, she would receive $250.00 per month until the equitable distribution obligation had been repaid. The court offered no explanation for its adjustments to the Master's report.

## II.

The debtor contends that the monthly equitable distribution payments mentioned in the June 21, 1985 order are in the nature of a property division and so are dischargeable pursuant to 11 U.S.C. § 727.[2] The plaintiff asserts that all monthly payments are nondischargeable under 11 U.S.C. § 523(a)(5). That statutory provision states

> (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
> > (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act [42 USCS § 602(a)(26)], or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
> >
> > (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

The parties are correct that a distinction exists by which obligations in the nature of support, alimony or maintenance are not dischargeable while property settlement obligations are dischargeable. *E.g., Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.

---

**2.** The debtor concedes that the alimony payments of $250.00 per month until his retirement are not dischargeable. 11 U.S.C. § 523(a)(5).

1984); *In re Grijalva*, 72 B.R. 334 (S.D.W. Va.1987). That distinction arose from a trilogy of Supreme Court decisions issued at the turn of the twentieth century. In *Audubon v. Shufeldt*, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901), *Dunbar v. Dunbar*, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084 (1903), and *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904), the Court engrafted into the former Bankruptcy Act of 1898 the concept that support, alimony and maintenance payments were nondischargeable obligations because these obligations are based upon a moral and legal duty to provide for one's spouse and children which, as a matter of policy, Congress would not have intended to discharge. Indeed, Congress amended § 17 of the Act to make this policy determination express. *See generally Shine v. Shine*, 802 F.2d 583 (1st Cir.1986); Scheible, *Defining "Support" Under Bankruptcy Law: Revitalization of the "Necessaries" Doctrine*, 41 Vanderbilt L.Rev. 1 (1988) (*"Scheible"*).

For example, in *Audubon*, the Supreme Court stated:

Alimony does not arise from any business transaction but from the relation of marriage. It is not founded on a contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction.... But its obligation in that respect does not reflect its nature.

181 U.S. at 577–78, 21 S.Ct. at 736.

Property divisions were viewed, in contrast, as a process by which the property acquired during marriage would be equitably divided, taking into account the monetary and nonmonetary contributions of the spouses, and distinct from any duty of support. *See In re Coffman*, 52 B.R. 667 (Bankr.D.Md.1985); *Scheible*, at 4, 24 ("Property division is a separation of ownership rights, legal or equitable....").

It has never been easy to distinguish between alimony (or support or maintenance) and property distribution. The distinction becomes more blurred as equitable division has evolved under state law, so that one purpose to be achieved by such division is support. *See Scheible*, at 6–7, 12–14.[3] This difficulty and the partial merger of the two types of obligations caused the Commission on the Bankruptcy Laws of the United States to recommend to Congress, prior to passage of the Bankruptcy Reform Act of 1978, that it end the distinction and thereby make alimony, support, maintenance *and* property settlement obligations nondischargeable. *Report of the Commission*, H.R. Doc. No. 93–137, 93rd Cong. 1st Sess. (1973), Part II, at 136, 139. *See also Shine v. Shine*, 802 F.2d at 586. Congress rejected this suggestion, leaving the historical distinction intact. *See* H 11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); S 17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini). *See also Scheible*, at 28.

Much judicial energy has been spent in attempting to decide whether a given obligation arising from the prepetition marital relationship is dischargeable, and in providing a reasoned decision.[4] This task

---

**3.** Here, the plaintiff highlights this issue by contending that the alimony award was discounted in some way by the equitable distribution. Certainly, the master's report took into account the wife's income needs in its recommendation as to property division. Moreover, Pennsylvania law does list among its factors to be considered for property division items such as income, skills, employability and needs of the parties, 23 P.S. § 401(d)(3), the standard of living established during marriage, (d)(9), and the economic circumstances of each party, (d)(10). Similar factors are considered when awarding alimony. 23 P.S. § 501(b)(1), (3), (8), (10).

**4.** There are at least 19 reported Court of Appeals decisions construing obligations under § 523(a)(5). All circuits are represented except, alas, the Third. *Forsdick v. Turgeon*, 812 F.2d 801 (2d Cir.1987); *Matter of Benich*, 811 F.2d 943 (5th Cir.1987); *In re Goin*, 808 F.2d 1391 (10th Cir.1987); *In re Yeates*, 807 F.2d 874 (10th Cir.1986); *Shine v. Shine*, 802 F.2d 583 (1st Cir.1986); *Matter of Long*, 794 F.2d 928 (4th Cir.1986); *Draper v. Draper*, 790 F.2d 52 (8th Cir.1986); *Tilley v. Jessee*, 789 F.2d 1074 (4th Cir.1986); *In re Singer*, 787 F.2d 1033 (6th Cir. 1986); *In re Harrell*, 754 F.2d 902 (11th Cir. 1985); *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984); *Troup v. Troup*, 730 F.2d 464 (6th Cir.1984); *Boyle v. Donovan*, 724 F.2d 681 (8th

has been made difficult not just by the blurring of the purposes of support and property division but by competing policy considerations.

■ For example, the legislative history makes clear that whether an obligation is in the nature of support or alimony is a federal bankruptcy rather than state law question. H.R.Rep. No. 95–595, 95th Cong. 2d Sess. 364 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6320. *See, e.g., In re Yeates,* 807 F.2d 874, 877 (10th Cir.1986). As the Eighth Circuit Court of Appeals stated:

> Though we of course regard the decisions of the state courts with deference, bankruptcy courts are not bound by state law that define an item as maintenance or property settlement, nor are they bound to accept a divorce decree's characterization of an award as maintenance or a property settlement.

*In re Williams,* 703 F.2d 1055, 1057 (8th Cir.1983).

Most courts, though, have resisted the temptation to utilize § 523(a)(5) as a source of federal domestic relations law. *See, e.g., In re Calhoun,* 715 F.2d at 1107–1108 ("state law ... may provide a useful source of 'guidance' "); *In re Spong,* 661 F.2d 6, 9 (2d Cir.1981):

> Congress could not have intended that federal courts were to formulate the

bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well established laws of the states.

■ The tension between applying state law and creating bankruptcy domestic relations law has a number of aspects. One that is obvious is whether an obligation may be in the nature of nondischargeable support when state law does not impose such a support obligation. *See, e.g., In re Harrell,* 754 F.2d 902 (11th Cir.1985) (although there is no state law obligation to pay for post-majority educational expense and child support, such an obligation is nondischargeable). Another aspect, which is more relevant to the instant dispute, is the method by which a bankruptcy court should determine whether a particular obligation is nondischargeable. To what extent does the court consider the intent of the parties or of the state court? Similarly, is the nature of the obligation determined at the time of creation or at the time the bankruptcy petition is filed? [5]

In interpreting former § 17(a) of the Act, courts generally focused upon the intent of the parties or of the state court in order to determine the true nature of the obligation. *See, e.g., Melichar v. Ost,* 661 F.2d 300 (4th Cir.1981); *Barth v. Barth,* 448 F.Supp. 710 (E.D.Mo.1978) *aff'd mem.* 590 F.2d 340 (8th

---

Cir.1984); *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983); *In re Williams,* 703 F.2d 1055 (8th Cir.1983); *Stout v. Prussel,* 691 F.2d 859 (9th Cir.1984); *Matter of Coil,* 680 F.2d 1170 (7th Cir.1982); *In re Spong,* 661 F.2d 6 (2d Cir.1981); *In re Maitlen,* 658 F.2d 466 (7th Cir.1981). It has been stated that in bankruptcy "it is more important that the applicable law be settled than that it be settled right." *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J. dissenting). Obviously, neither Congress nor the judicial system has yet been able to effectuate this principle with regard to the issues addressed in § 523(a)(5).

**5.** Another tension implicit in § 523(a)(5) is present in all of § 523(a). The nondischargeability of a debt conflicts with the fresh start policy of bankruptcy law. *E.g., Shine v. Shine,* 802 F.2d at 585. The suggestion in *In re Yeates,* 44 B.R. 575, 579 (D.Utah 1984), *aff'd. on other grounds,* 807 F.2d 874 (10th Cir.1986), that there

is no such tension, that Congress has resolved the issue in favor of nondischargeability, is overbroad. The manner in which statutory ambiguities are resolved, *see Shine v. Shine,* 802 F.2d at 585 (exceptions to discharge are to be construed narrowly), and the assignment of burdens of proof reflect competing concerns.

I agree with the vast majority of courts which hold that the burden of proof is on the party seeking a determination of nondischargeability. *See, e.g., Matter of Benich,* 811 F.2d 943, 945 (5th Cir.1987); *Matter of Long,* 794 F.2d 928, 930 (4th Cir.1986); *In re Calhoun,* 715 F.2d at 1111, n. 15; *In re Alloway,* 37 B.R. 420, 423 (Bankr.E.D.Pa.1984). *But see Stamper v. Stamper,* 17 B.R. 216, 220–21 (Bankr.S.D.Ohio 1982). This is the usual allocation of the burden in determining nondischargeability complaints. *See generally, In re Borbidge,* 90 B.R. 728, 733–34 (Bankr.E.D.Pa.1988). As there is no issue of fraud or wrongful conduct involved, the burden may be met by the preponderance of the evidence. *Id.*

Cir.1978). Such an approach has been carried forward under the Bankruptcy Code:

> Intent clearly remains the threshold that must be crossed before any other concerns become relevant.

*Tilley v. Jessee,* 789 F.2d 1074, 1078 n. 4 (4th Cir.1986). *Accord, e.g., Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984) ("Rather, the crucial question is what function did the parties intend the agreement to serve when they entered into it").

█ I agree with those courts which have noted that the question of intent is relevant but should not be the *sine qua non* for determining dischargeability.[6] *See, e.g., In re Calhoun; In re Miller,* 34 B.R. 289 (Bankr.E.D.Pa.1983). To make intent dispositive would be to cede to the state court (or the parties) what is, at bottom, a federal question. Moreover,

> at the time the alimony is awarded and the property divided, very often the parties have no intent to differentiate between an alimony debt and a property settlement debt and will view both merely as financial obligations arising from the separation or divorce.

*In re Alloway,* 37 B.R. at 427. Intent, though, is relevant in determining the nature of the obligation for it is possible, if not likely, that the parties or the state courts will have achieved what they intended. The bankruptcy inquiry, though, is to determine the function of the debt. To the extent the obligation serves the financial purpose behind alimony (or support or maintenance) it is nondischargeable, whatever it is called. To the extent the debt is to divide property irrespective of financial need, it is dischargeable. In some instances, the debt will serve both functions and thus be partly dischargeable. To decide the function of the obligation, "the bankruptcy court may, therefore, consider extrinsic evidence....", *Matter of Benich,* 811 F.2d 943, 945 (5th Cir.1987), in addition to the characterization placed upon the debt by the state court or the parties.[7]

█ It is not entrusted to bankruptcy courts, however, to actually determine the amount of alimony or support appropriate to the circumstances. It is for state court to make that determination; bankruptcy courts should only determine the nature of the obligation assessed by the state courts. *In re Yeates,* 44 B.R. at 579. As the Eleventh Circuit noted,

> The statutory language [of § 523(a)(5) ] suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support. The language does not suggest a precise inquiry into financial maintenance to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change.

*In re Harrell,* 754 F.2d at 906.

It is true, as the Fourth Circuit noted in *Calhoun,* that such a limited approach might, on occasion, result in the nondischargeability of a debt beyond what an objective bankruptcy observer would conclude was sufficient to meet the needs of the non-debtor spouse. Yet, a more expansive role exceeds congressional intent (to the extent discernible from the legislative history), differs from the longstanding approach under the former Act, undermines comity considerations[8] and threatens to convert this bankruptcy forum into a federal domestic relations court. *See In re Harrell.* If the original state court award was excessive, it may be addressed by a state court appeal. If the circumstances of the

---

**6.** That is not to say that evidence showing an intent to create an alimony-type obligation would be insufficient to meet plaintiff's burden of proof that the debt is nondischargeable.

**7.** Some courts have listed various factors as a checklist for deciding the true nature of the obligation. *See, e.g., In re Coil,* 680 F.2d 1170 (7th Cir.1982); *In re Coffman,* 52 B.R. at 674–75 (18 factors); *In re Alloway,* 37 B.R. at 425 (11 factors). Although helpful, no list could be complete.

**8.** Those comity concerns are heightened by 11 U.S.C. § 523(c). Although the nondischargeability question is one of federal bankruptcy law, it has not been left exclusively to bankruptcy courts. § 523(c) allows the nature of the debt to be decided by state court. *See Goss v. Goss,* 722 F.2d 599 (10th Cir.1983) (construing former § 17(a)(7) of the Act).

parties change warranting an adjustment of the obligation, state law allows a party to request a modification. *Lee v. Lee,* 352 Pa.Super. 241, 507 A.2d 862 (1986). *See In re Harrell,* 754 F.2d at 957 n. 8; *In re Delaine,* 56 B.R. 460, 466 (Bankr.N.D.Ala. 1985). *See also Forsdick v. Turgeon,* 812 F.2d 801, 804 (2d Cir.1987):

> State-crafted family law mechanisms should not be disturbed by federal court intervention unless there is an unmistakable mandate from Congress to do so in order to achieve a valid federal objective. [§ 523(a)(5) creates no such mandate].

In sum, my inquiry here is whether the divorce decree which awarded the plaintiff $250.00 per month until a total of $35,477.56 has been paid is in the nature of alimony. I do not consider whether, in my opinion, the relative needs of the parties warrants a different result, *Forsdick v. Turgeon,* 812 F.2d at 804, nor do I consider the parties' respective financial circumstances at the time the bankruptcy was filed or at the present. *Matter of Gebhardt,* 53 B.R. 113 (W.D.Mo.1985); *Matter of Talley,* 57 B.R. 75 (Bankr.W.D.Mo.1985); *In re Miller.*

### III.

■ The June 21, 1985 divorce decree makes two monthly monetary awards, one styled alimony and the other styled equitable distribution of marital property. The Master's report makes clear that the property division was structured to insure a monthly income sufficient to meet the plaintiff's needs. Therefore, although labelled a property division, there is clearly a support aspect to this award, *see In re Goin,* 808 F.2d 1391 (10th Cir.1987); *Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984), as well as an aspect unrelated to support. The Master suggested that $300.00 per month was sufficient to meet plaintiff's

9. Of course, Mrs. Jenkins retains any rights she may have to file a claim and share in the distribution of this estate as a creditor. I do not pass on any aspect of Mrs. Jenkins' claim here.

10. Stated another way, the divorce decree awarded Mrs. Jenkins $35,477.56 in monthly increments of $250.00 (or approximately 142 monthly payments) plus an indeterminate number of monthly payments also of $250.00, until her husband retired. The double payments

needs, but the state Court of Common Pleas did not accept this recommendation, reducing the payments to $250.00.

Based upon the limited evidence presented, I conclude that the plaintiff has met her burden of showing that $250.00 per month was in the nature of alimony. No evidence was presented in this court disclosing that in June 1985, her needs required $500.00 per month. Therefore, the "equitable distribution" payments made in conjunction with "alimony" payments are a dischargeable debt.[9] The "equitable distribution" payments made after the "alimony" payments cease are in the nature of alimony and are therefore nondischargeable under § 523(a)(5).[10]

An appropriate order granting judgment shall be entered.

were partially in the nature of support and partially in the nature of a property settlement. The discharge of the property settlement component will leave the plaintiff with a nondischargeable right to receive approximately 142 monthly payments of $250.00 beginning with the effective date of the divorce decree. This amount will be unaffected by the date the debtor retires.