In re Wolfgang **SCHMIEL**, Debtor.

Alma **SCHMIEL**, Plaintiff,

v.

John P. **JUDGE** and Wolfgang Schmiel, Defendants.

Bankruptcy No. 88–11699S.
Adv. No. 88–2060S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 20, 1988.

As Amended Dec. 23, 1988 and
Feb. 8, 1989.

---

David S. Hope, Carolyn B. Moran, Harold M. Goldner, Philadelphia, Pa., for plaintiff.

Jacquelyn A. Barnes, Philadelphia, Pa., for debtor.

John P. Judge, Philadelphia, Pa., Trustee.

Kevin P. Callahan, Office of the U.S. Trustee, Philadelphia, Pa., U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION.

The instant adversary proceeding requires that we interpret 11 U.S.C. § 523(a)(5), which renders any indebtedness in the nature of alimony and support nondischargeable in any bankruptcy case. We hold that the amounts due to the Plaintiff, the ex-wife of the Debtor, for alimony and support, while indisputably nondischargeable, should be determined by the state courts. We also hold that a Divorce Decree directive to the Debtor to pay a $50,-494.27 lump-sum to the Plaintiff is clearly in the nature of a property settlement and is dischargeable. Finally, we find, by a

narrow margin, that a Divorce Decree provision requiring the Debtor to pay a portion of the Plaintiff's attorneys fees creates a non-dischargeable obligation because it appears that this indebtedness is in the nature of alimony.

## B. PROCEDURAL HISTORY.

The Debtor, WOLFGANG SCHMIEL, a native of Germany, filed the underlying Chapter 7 bankruptcy case on May 17, 1988. Representing him in this venture were the Jacoby & Meyers Law Offices (hereinafter referred to as "the Jacoby firm"), which is a national chain of legal clinics which prominently advertises its low fees.

On September 14, 1988, ALMA SCHMIEL, the Debtor's ex-wife (hereinafter "the Plaintiff"), filed a four-count adversary proceeding, requesting that the following aspects of a state-court Divorce Decree of February 9, 1988, be declared nondischargeable: (1) Alimony of $100.00 weekly for three years; (2) Counsel fees and expenses of $11,500.00 payable to her counsel in the state-court proceedings, Abrahams & Lowenstein (hereinafter "the Abrahams firm"); (3) Support arrears of $36,000.00; and (4) A directive to transfer the parties' former marital residence, valued at $70,000.00 in the Decree, to the Plaintiff. Her counsel in this proceeding here was a large, prestigious Philadelphia firm, Schnader, Harrison, Segal, and Lewis (hereinafter "the Schnader firm").

On October 11, 1988, the Debtor answered. He admitted that the liabilities for alimony and support were nondischargeable, although the amount of the support arrears was disputed. He denied liability for counsel fees and expenses and appeared to contest the validity of liens which the Decree ordered to be placed upon the marital assets to be distributed to the Plaintiff pending distribution and payment of all counsel fees and expenses.[1]

Very shortly thereafter, on October 21, 1988, the Plaintiff filed a voluminous Motion for Summary Judgment, raising the same issues as her Complaint, but also seeking that a lump-sum liability of $50,494.27 which the Debtor was directed, in the Decree, to pay to the Plaintiff be deemed nondischargeable as well.[2] Since the matter was listed for trial on November 22, 1988, we issued an Order of October 25, 1988, directing the Debtor to file any Briefs in opposition to this motion on or before November 8, 1988, and reiterating the retention of the November 22, 1988, trial date. The Debtor's Brief was belatedly filed on November 15, 1988. Therein, the Debtor restated his lack of opposition to the nondischargeability of his alimony and support obligations, and, in addition, expressed his intention to deed the marital home to the Plaintiff, which he apparently proceeded to do thereafter.

At the hearing on November 22, 1988, we indicated, at the outset, that we denied the Plaintiff's Motion for Summary Judgment and would hear evidence on the merits of the proceeding. Although two members of the Schnader firm were present, examination and cross-examination were conducted by Harold M. Goldner, Esquire, (hereinafter "Goldner"), a third attorney from a different firm. Counsel from the Jacoby firm was present to defend the Debtor. The memorable characteristic of the hearing was Goldner's bombastic cross-examination of the Debtor regarding, *inter alia,*

---

1. The Debtor has never mustered any challenge of the liens imposed upon his property by the Decree, either by a motion pursuant to 11 U.S.C. § 522(f)(1) to avoid them or otherwise. Whether such liens can be avoided is a subject of some disagreement. *Compare Maus v. Maus,* 837 F.2d 935 (10th Cir.1988); and *In re Pederson,* 78 B.R. 264 (9th Cir.BAP 1987), *with Boyd v. Robinson,* 741 F.2d 1112 (8th Cir.1984); *In re Warren,* 91 B.R. 930 (Bankr.D.Ore.1988); and *In re McCormick,* 18 B.R. 911 (Bankr.W.D.Pa.), *aff'd,* 22 B.R. 997 (W.D.Pa.1982). *See also In re Chandler,* 77 B.R. 513, 517–19 (Bankr.E.D.Pa.1987),

*aff'd,* C.A. No. 87–6516 (E.D.Pa. March 30, 1988) [1988 WL 34921]; and P. Arkans, *The Death of the Divorce Lien?,* NORTON BANKR.L. ADVISOR, 1988–No. 8, at 6 (August, 1988).

2. It would not appear proper to raise an issue in a Motion for Summary Judgment that had not been raised in the underlying Complaint. However, the Debtor did not object to this action on the part of the Plaintiff, and therefore we shall proceed to decide this issue on the merits.

his conviction for illegally attempting to import a Mercedes–Benz automobile in late 1982. The Debtor answered with appropriate reserve and, while admitting his involvement in the importation matter, provided a rendition which sought to explain his conduct. The filings and the course of the hearings left us with the distinct impression that the Plaintiff has displayed legal overkill in her actions in this court. After the hearing, the parties were accorded until December 7, 1988, to simultaneously file Supplementary Briefs in support of their respective positions, which they proceeded to submit in timely fashion.

## C. THE TASK OF LIQUIDATION OF THE DEBTOR'S NONDISCHARGEABLE ALIMONY AND SUPPORT OBLIGATIONS SHOULD BE LEFT TO THE STATE COURTS.

The operative Code section underlying this dispute is 11 U.S.C. § 523(a)(5), which provides as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; ...

We are greatly aided in our interpretation of this Code section by comprehensive Opinions by both of our judicial brethren, filed, coincidentally, on the same date, September 21, 1988. *In re Pollock*, 90 B.R. 747 (per TWARDOWSKI, CH. J.); and *In re Jenkins; Jenkins v. Jenkins*, 94 B.R. 355 (per FOX, J.).

At the outset, we expressed, to both parties, our intention not to become embroiled in a dispute over the amounts of the arrears in alimony or, particularly, support. Clearly these debts are nondischargeable, as the Debtor properly concedes. As we explained in *In re Stelweck*, 86 B.R. 833, 844–45 (Bankr.E.D.Pa.1988), we believe that liquidation of a nondischargeable debt has little, if any, relationship to the debtor's bankruptcy estate, particularly in a no-asset Chapter 7 case like the instant matter. The determination that an indebtedness is nondischargeable allows a creditor to pursue the debtor after the bankruptcy is completed in other forums. Therefore, it is appropriate that we defer to other forms in liquidation of these obligations. Deference is particularly apt in the areas of support and alimony, where the state courts have considerable personnel and other resources available in enforcement offices to accomplish such determinations and collections of amounts due. Moreover, these determinations can be consumptive of scarce bankruptcy resources, as was true in *Pollock, supra*, 90 B.R. at 755–59.

We shall therefore proceed to merely enter an Order that the Debtor's alimony and support obligations are nondischargeable. While the automatic stay prevents the Plaintiff from utilizing the state court enforcement mechanisms at present, we shall hurry this particular case along to discharge in order that the Plaintiff may shortly hereafter make use of them. To this end, in our Order of November 28, 1988, establishing a post-trial briefing schedule, we directed the Debtor to file a proposed amendment to his Schedule A–3,

which he has done. The amendments did not add any new creditors. Upon receipt of the trustee's report, the case will be ripe for dispatch of the informational notice sent to Chapter 7 debtors in this court prior to discharge and, thereafter, entry of a Discharge Order embracing all dischargeable debts. *See* Local Bankruptcy Rule 4008.2(a), (b). The entry of the Discharge Order will terminate the automatic stay. 11 U.S.C. § 362(c)(2)(C). We shall therefore direct the Trustee and the Clerk's Office to expedite performance of these duties in this case in our Order.

### D. THE DEBTOR'S OBLIGATION TO PAY THE $50,494.27 TO THE PLAINTIFF IS CLEARLY AN ASPECT OF THE PROPERTY SETTLEMENT AND IS THEREFORE DISCHARGEABLE.

In *Jenkins, supra,* at 357–361, Judge Fox has expressed, in typically cogent fashion, the historical basis and policy reasons for the distinction "by which obligations in the nature of support, alimony or maintenance are not dischargeable while property settlements are." *Id.* at 357. We note the restrictive language of § 523(a)(5)(B), which states that a designation of a debt as "alimony, maintenance, or support" in a court decree or separation agreement is not conclusive that a debt is in fact nondischargeable. We also note the absence of Code language stating the converse, *i.e.,* that designation of a debt as a property settlement does not preclude a court from considering it as being, in fact, in the nature of alimony, maintenance, or support. However, we agree with the analysis of Judge Fox that the converse of § 523(a)(5)(B) must be assumed to be true, and that a debt in the nature of alimony or support, irrespective of its designation, should not be dischargeable. *See Jenkins,* at 361. The extension of § 523(a)(5) to even Chapter 13 cases is indicative of a Congressional policy of giving first priority to the adequate financial maintenance of a debtor's children and ex-spouse, above all considerations to the debtor's "fresh start." We would liberally protect the right of children, spouses, and former spouses to such a priority.

However, we cannot read the Code as allowing us to convert what is clearly a property settlement award into support or alimony. Moreover, we believe that this is precisely what the Plaintiff is asking us to do in her request that the Debtor's liability to pay the Plaintiff a lump sum of $50,-494.27 be declared nondischargeable.

The documents significant to our analysis are the Divorce Decree of February 9, 1988, and the Master's Report of October 27, 1987. The Decree effected no changes in any of the sums recommended to be distributed and/or awarded to the parties by the Master. Therefore, we assume that the Master's Report was adopted by the court *in toto.*

The Master's Report is thirty-seven (37) pages in text, and also includes numerous exhibits. It is indicative of the labors necessary when the parties agree to next to nothing, and a divorce master must wade through emotionally-charged testimony in an attempt to determine an equitable basis on which to divide all of the marital property. Running through the Master's Report is a thread of the Plaintiff's deep distrust of the Debtor's disclosure of his resources and the belief that he has considerable undisclosed property hidden in Europe. The Plaintiff apparently utilized considerable resources in seeking to locate this property, but was largely unsuccessful. Consequently, the Plaintiff, employing the Abrahams firm, most skilled domestic practitioners, amassed a bill of $46,610.64 for services and $2,837.14 for costs in her divorce case. The Debtor, on his part, incurred expenses of his own of $21,730.75 for employment of his counsel, Michael J. Rofko, Esquire. The Master's Report contains an air of skepticism regarding the Debtor's denials that he owns more than he has disclosed, but no hard facts on which to conclude that any specific valuable assets were in fact concealed.

The Master's Report ends with a series of "Combined Recommendations" which include seven (7) separate repetitions of the word "Recommending." We conclude that

this form expresses an intention to divide the Recommendations into seven (7) portions. The first portion recommends that a divorce be granted. In the second, the Master, considering all of the testimony he has heard regarding the existence or non-existence of undisclosed property of the Debtor, concludes that, of total marital property valued at $206,793.45, the Plaintiff should get sixty (60%) percent, or $124,076.07, represented by the conveyance of the marital home in Philadelphia and one Mercedes auto to her and a monetary payment by the Debtor to her which, with certain adjustments, constitutes the $50,494.27 sum in issue. The Debtor was awarded a more valuable Mercedes auto, a bank account containing $4,892.45, and real estate in Dusseldorf, West Germany. The third paragraph of the Recommendations proposes alimony payments of $100.00 weekly to be made to the Plaintiff for three (3) years. The fourth paragraph awards a 1976 Ford to the Debtor as a non-marital property. The fifth obligates the Debtor to pay the Abrahams firm $10,000.00 for services and $1,500.00 for costs out of the amounts of $46,610.64 and $2,837.17, respectively, which the Plaintiff requested. The sixth requires the Debtor to pay two-thirds of a $1,463.00 court reporter's bill. The final paragraph addresses the master's fee.

In its Decree, the court recites the terms it is "ORDERED AND DECREED" four (4) times: before granting the divorce; before the property distribution including the payment of the $50,494.27; before the award of alimony; and before the assessment of $11,500.00 in fees and costs to the Abrahams firm. We believe that this, accordingly, indicates a division of the Decree into four portions.

■ It is apparent to us, from reading both the Master's Report and the Decree, that the $50,494.17 is in the portion of both concerning property distribution and therefore is strictly an aspect of the property settlement. We recognize that the Opinions in both *Jenkins*, at 359–360; and *Pollock*, 90 B.R. at 754–55, emphasize that the intent of the parties is perhaps the most significant element to be considered in such determinations. However, where the court Decree is the product of a totally adversarial process in which the parties agree to nothing, the intent of the parties is basically irrelevant. In such a case, as *Jenkins* also suggests, at 359–360, the intent of the state court, as expressed in its directives, is the critical element. We have no doubt that, in the context of the Master's Report and the Decree incorporating it, the intent of the Master and the judge were, respectively, to make the $50,494.27 payment an aspect of the property settlement between the parties.

In her initial Brief, submitted by the Dilworth firm, the Plaintiff argues that the Plaintiff's severe financial need justifies characterization of this payment as support. However, the award of the marital home, an automobile, and alimony and support, and some attorneys' fees and costs to the Abrahams firm appear calculated, in the court's mind, to equalize the parties' respective financial pictures. At present, the Debtor's income is less than that of the Plaintiff. The Debtor's choice of the Jacoby firm to contest the high cost and quality of the Plaintiff's counsel is not indicative of superior financial resources of the Debtor.

The Plaintiff's Supplemental Brief, submitted by Goldner, is a reprise to his bombastic attack on the Debtor's general credibility at the hearing on November 22, 1988. However, we are faced with an interpretation of state court orders resulting from hearings where credibility was doubtless already tested and a factor in the results. The Master's finding do not rise above skepticism of the Debtor's credibility. We were left with the impression, at the trial of this matter, that the Debtor is credible. In any event, we would not be inclined to read the state court Master's Report and Decree differently just because we found the Debtor to be not credible. The Report and Decree clearly characterize the payment of the $50,494.27 as an aspect of the property settlement. We perceive no basis to alter this result and therefore conclude rather easily that this debt is dischargeable.

E. THE RECORD CONTAINS SUFFI-
CIENT EVIDENCE TO SUPPORT
THE CONCLUSION THAT THE
AWARD TO THE PLAINTIFF'S
COUNSEL IS AN AWARD IN THE
NATURE OF ALIMONY OR SUP-
PORT, AND HENCE THIS OBLI-
GATION IS NON–DISCHARGEA-
BLE.

■ The dischargeability of the $11,-500.00 which the Debtor was directed to pay to the Abrahams firm is a closer question. It seems obvious that, if the award were incorporated in the portion of the Master's Report and/or the Divorce Decree pertaining to the property settlement, it would then be dischargeable. See In re Kijewski, 91 B.R. 48, 50–51 (Bankr.N.D.Ill. 1988). However, if it were in that part of the Report or Decree designated as part of the alimony award, it would clearly be non-dischargeable. See In re Horton, 31 B.R. 464, 465–66 (Bankr.M.D.Pa.1983).

When, like here, the placement of the award of counsel fees in the Decree does not allow that any logical conclusions be drawn, the task of the court is more difficult. In Pollock, 90 B.R. at 759, while acknowledging that the majority of courts have found such award non-dischargeable, Chief Judge Twardowski concludes that, in the absence of any evidence of the parties' intent, awards of attorneys' fees are dischargeable. Thus, he places at least some burden of proving that the award of fees is in fact a support obligation upon the party challenging dischargeability.

Other courts have held to the contrary, concluding that such awards are deemed nondischargeable unless the debtor meets the burden of proving otherwise. See, e.g., In re Zimberoff, 91 B.R. 839, 841–42 (Bankr.N.D.Ill.1988); In re Kloss, 29 B.R. 720, 721 (Bankr.M.D.Pa.1983); In re Shenewolf, 27 B.R. 187, 188 (Bankr.M.D. Pa.1982); and In re Glover, 16 B.R. 213, 215 (Bankr.M.D.Fla.1981).

■ We believe that the analysis of Chief Judge Twardowski is consistent with the general treatment of § 523(a) matters. Objections to discharge "must be construed strictly against the objector and liberally in favor of the debtor" to maximize the debtor's post-bankruptcy "fresh start." In re Woerner, 66 B.R. 964, 971 (Bankr.E.D.Pa. 1986), aff'd, C.A. No. 86–7324 (E.D.Pa. April 28, 1987). See also, e.g., In re Lane, 76 B.R. 1016, 1023 (Bankr.E.D.Pa.1987); and In re Fitzgerald, 73 B.R. 923, 926 (Bankr.E.D.Pa.1987). Nothing in the Code suggests that § 523(a)(5) matters are to be treated any differently than other dischargeability matters, and considerable authority indeed so holds. See e.g., In re Benich, 811 F.2d 943, 945 (5th Cir.1987); In re Long, 794 F.2d 928, 930 (4th Cir. 1986); Jenkins, supra, at 359–360 n. 5; and In re Alloway, 37 B.R. 420, 423 (Bankr.E.D.Pa.1984). In fact, as we noted at page 377 supra, the language of § 523(a)(5)(B) indicates, if anything, a bias in favor of debtors in making assumptions on the basis of court decrees and written agreements in such matters.

■ However, as we also indicated at page 7 supra, we do believe that dependent children, spouses, and former spouses are entitled to favored treatment and that § 523(a)(5) is therefore properly read liberally to further their needs. Although there is nothing in § 523(a)(5) which directly speaks to the needs of attorneys of such dependents, if the dependent children or spouse is able to show any nexus, even a "scant" one, Zimberoff, supra, 91 B.R. at 842, between their maintenance and support and the Debtor's payment of the fee award, such an award may be nondischargeable. See Miskovsky v. Skinner, 88 B.R. 360, 361 (W.D.Okl.1987); Pollock, 90 B.R. at 759; In re Snyder, 37 B.R. 519, 520 (Bankr.M.D.Pa.1984); and S. Scheible, Defining "Support" Under Bankruptcy Law: Revitalization of the "Necessaries" Doctrine, 41 VANDERBILT L.REV. 1, 44–46 (1988). It cannot be forgotten that, in Pennsylvania, as in most states, an allowance of attorneys' fees in a matrimonial action is an aspect of alimony. See 23 Pa.S. § 502. Consequently, such awards are property based only upon financial need. See, e.g., Hoover v. Hoover, 288 Pa.Super. 159, 431 A.2d 337 (1981). Therefore, any award of attorneys' fees in a

Pennsylvania matrimonial proceeding could arguably be considered an aspect of alimony.[3] However, we agree with our Chief Judge in concluding that, where evidence of any such nexus is totally lacking, there is no logical basis to assume it.

■ Having established some general principles in this area, we now apply them to the instant factual setting. The Master's Report and the Divorce Decree both separate the award of attorneys' fees and costs from both the property distribution and the alimony aspects of their Recommendations and Order, respectively. The most comprehensive statement of the reasons for the award to counsel are set forth at page 35 of the Master's Report as follows:

> The Master finds as a fact that extensive legal services and expenses were required to prove her contentions concerning the marital assets and earnings of the Husband [Debtor]. The Master has taken into consideration the fact that Wife will acquire certain marital property as the result of a Decree in Divorce in this case, and that Husband is obligated to pay some of Wife's counsel fees, etc. Considering the potential ability of the parties to pay their respective counsel fees and costs, it is found as a matter of fact that Husband should contribute to Wife's obligations of that type and therefore reports that in his opinion the sum of $10,000.00 as counsel fees and $1,500.00 for expenses by Husband to Wife, is fair and reasonable.

We find that this statement, in the context of applying 23 Pa.S. § 502 in which it was uttered, as, at least in part, is a characterization of the award to Plaintiff's counsel as alimony. The award appears to flow from *both* the fact that the Plaintiff would acquire certain property in the property settlement *and* from the relative abilities of both parties to pay her fees and costs, but the latter appears somewhat more significant in the mind of the Master.

It appears that the Master found the fees claimed by the Abrahams firm to be excessive. Therefore, he directed the Debtor to pay less than a quarter of them. At trial, the Plaintiff produced a bill from the Schnader firm setting forth a current balance due of $55,402.24. It is unclear whether this is a cumulative bill of the services of the Abrahams firm, Goldner, and the Schnader firm, or just the bill of the Schnader firm. We hope that it is a cumulative bill.

We believe that the inferences that could be drawn from the Master's Recommendation that the Debtor pay only a relatively small portion of the attorneys' fees requested are ambivalent. On one hand, we might conclude that the Debtor was elusive and was directed to pay as ordered only due to compulsion created by superior, high-priced legal opposition. We could reason that, since the Plaintiff will be left with a bill of almost $44,000.00 even if the Debtor paid the $11,500.00, her needs are great. On the other hand, we might observe that, if the Plaintiff is going to run up bills over $55,000.00 at high-priced law firms, she is not really so destitute and must be prepared to foot her own bill.

Speaking to only what we observed in this court, the lawyering on behalf of the Plaintiff was excessive. That portion of the Complaint pertaining to alimony and support was unnecessary. The filing of the Motion for Summary Judgment was precipitous and superfluous, similar to the motion dismissed in its entirety by us in *In re Jackson; Leonard v. Wessel,* 92 B.R. 987 (Bankr.E.D.Pa.1988). Three lawyers were certainly not needed to try this case for her. Excessive lawyering wastes scarce judicial resources and the financial

---

**3.** We are mindful that we must utilize federal law rather than state law in applying § 523(a)(5). *See, e.g., In re Yeates,* 807 F.2d 874, 877 (10th Cir.1986); *In re Williams,* 703 F.2d 1055, 1056–57 (8th Cir.1983); *In re Spong,* 661 F.2d 6, 8–9 (2d Cir.1981); and *Jenkins, supra,* at 359. However, as the *Spong* court points out, federal courts cannot "formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established law of the States." 661 F.2d at 9. *But see id.* at 11 (dis. op.) ("Congress wanted only spouses and children to benefit from § 523(a)(5). [The wife's attorney] is neither.")

resources of all involved, and we are disinclined to reward it. However, the state court did, apparently, consider this factor already in allowing the Plaintiff only a fraction of the attorneys' fees which she sought. This conclusion should also not be a factor in characterization of the limited fees awarded.

The end result is that we believe that the Plaintiff just barely produced sufficient evidence to establish that the award of fees and costs to her counsel was in the nature of alimony. The Master's Report and Divorce Decree support, although less than conclusively, this result. In *Pollock*, by way of contrast, the Plaintiff failed to even put the crucial state-court matrimonial court orders into the record of the case. Since the Plaintiff, by a slight margin, met her burden as to this element, we conclude that the obligation of the Debtor to pay her counsel's fees and costs in the state-court proceeding is non-dischargeable.

## F. CONCLUSION.

An Order consistent with our within conclusions will be entered.

### ORDER

AND NOW, this 20th day of December, 1988, after conducting the trial of this matter on November 22, 1988, and considering the submissions of the parties, it is hereby ORDERED as follows:

1. Judgment is entered in favor of the Plaintiff, ALMA SCHMIEL, and against the Debtor–Defendant, WOLFGANG SCHMIEL, as to the matters recited in her Complaint only. As a result the obligations to the Plaintiff for alimony, support, and attorney's fees and costs payable to her state-court counsel, Abrahams and Lowenstein, are declared NONDISCHARGEABLE. However, the Debtor's obligation to the Plaintiff to pay a lump sum of $50,494.27, raised in the Plaintiff's Motion for Summary Judgment, is declared DISCHARGEABLE.

2. The Interim Trustee, Defendant, JOHN P. JUDGE, is directed to file his Report on or before December 30, 1988.

3. The Clerk of this Court is directed to send out the Notice required by Local Bankruptcy Form 4008.2 on or before January 6, 1989, and to thereafter prepare a Discharge Order in timely fashion.