In re Curtis R. CATRON, Debtor.

Curtis R. CATRON, Plaintiff,

v.

Nancy L. CATRON, Defendant.

Bankruptcy No. 91–25827–T.
Adv. No. 91–2317–T.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Sept. 23, 1992.

Jerrold G. Weinberg, Weinberg & Stein, Norfolk, VA, for defendant.

Joseph T. Liberatore, Marcus, Santoro & Kozak, Portsmouth, VA, for debtor/plaintiff.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This adversary proceeding came on for trial on June 11, 1992, upon debtor Curtis Catron's complaint to determine whether a debt to his former spouse can be discharged in light of § 523(a)(5) of the Bankruptcy Code. This memorandum opinion supplements the court's bench ruling that the debt owed to Nancy Catron is not dischargeable in bankruptcy.

### Findings of Fact

The debtor and the defendant were married for twenty-six years. With the exception of approximately nine months at the beginning of their marriage, Mrs. Catron did not work outside the home. In May 1989 they separated and a Final Decree of Divorce was entered in the Circuit Court of the City of Virginia Beach on August 21, 1990.

The debtor in the years preceding his divorce had significant real estate investments. He also ran an insurance agency business with varying degrees of success. The evidence conclusively establishes that he had access to significant resources which allowed him and Mrs. Catron to live a lavish lifestyle during the course of their marriage.

Mr. Catron instituted the divorce proceedings alleging Mrs. Catron had committed adultery. Mrs. Catron filed a cross-bill which stated that the Mr. Catron had also been guilty of adultery. In the Spring of 1990, the parties began serious settlement negotiations. On July 30, 1990, the parties knowingly and voluntarily entered a written agreement entitled Final Permanent Support and Property Settlement Agreement ("agreement"). This agreement was incorporated into the Final Decree of Divorce entered by the Circuit Court of Virginia Beach on August 21, 1990, and is the critical document in the resolution of this case.

The agreement provides in pertinent part:

Husband shall pay directly to Wife, as and *for spousal support, alimony and maintenance,* the (a) lump sum of $900,000 payable (i) $300,000 by the 1st day of July, 1995, and (ii) $300,000 by the 1st day of July, 2000, and (iii) $300,000 by the 1st day of July, 2005, and (b) periodic sum of $2,500 monthly for 180 months, beginning on the first of the month following sale and closing on the marital home, with both the lump sum and periodic spousal support not being subject to judicial revision since same is contractual, but both being subject to automatic termination upon the death of Wife or payment in full of the lump sum spousal support and all periodic spousal support....[1] (Plaintiff's Exhibit 2, p. 5) (emphasis added).

The total amount of spousal support provided for in the agreement is equivalent to $7,500.00 per month. Given the Catrons' luxurious lifestyle, this amount is within the range of reasonableness to maintain Mrs. Catron's economic position as during their

---

**1.** It is important to note that section 20–107.1 of the Virginia Code allows maintenance and support of a spouse to be made in "periodic pay- ments, or in a lump sum, or both." Va.Code Ann. § 20–107.1 (Michie 1990).

marriage. The agreement also contains the following specific language that addresses the crux of this adversary proceeding:

> The parties mutually covenant, represent, warrant, and agree that it is their *mutual intent* and bargain, which goes to the very essence of this entire agreement, that the monetary payments, obligations, and liabilities assumed and set forth herein for the benefit of the parties, respectively, including *spousal support, . . . shall be considered, for the purposes of federal bankruptcy law, exempt from discharge and nondischargeable in bankruptcy as debts to a spouse* or former spouse of the obligor, for alimony to, maintenance for, or support of a spouse or former spouse as *being in the nature of alimony, maintenance or support* as the debts, liabilities and obligations created by this agreement are *intended for economic security,* after considering many facts, circumstances and factors . . . (Pl.'s Ex. # 2, pp. 7–8) (emphasis added).[2]

### Position of Parties

Despite the clear language of the agreement the debtor argues that his former spouse has not proven that the debt is non-dischargeable under § 523(a)(5). The debtor

asserts that the "spousal support" language in the agreement is merely a label for what is actually a property settlement.

The debtor testified that he never intended to pay spousal support. The debtor cites his belief that he had a solid adultery case against his wife in state court as evidence of his lack of intent to pay spousal support. However, the testimony of the debtor's divorce lawyer raised serious doubt as to the strength of the debtor's adultery case. In fact, debtor's divorce lawyer expressed concern that Mrs. Catron may have been able to establish a credible countercharge of adultery.

The defendant, Mrs. Catron, relies on the strong language in the agreement to resist the discharge of the debt owed her. She asserts the agreement establishes a prima facie case that the debt is non-dischargeable, which has not been rebutted by the debtor.

### Discussion and Conclusions of Law

 Under 11 U.S.C. § 523(a)(5), debts for alimony ("spousal support"), maintenance, or support are not dischargeable to the extent that they are "actually in the nature of alimony, support or maintenance."[3] The

---

**2.** The agreement goes on to recite all the factors taken into consideration for awarding spousal support contained in Virginia Code § 20–107.1. The agreement also contains an integration clause. *See* Pl.'s Ex. 2, p. 24. The document clearly reflects the parties considered the possibility of a future bankruptcy.

**3.** 11 U.S.C. § 523(a)(5) provides in pertinent part:

> (a) A discharge under . . . this title does not discharge and individual debtor from any debt
> . . .
> (5) to a spouse, [or] former spouse . . . for alimony to, maintenance for, or support of such spouse . . ., in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial law by a governmental unit, or property settlement agreement, but not to the extent that . .
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; . . .

11 U.S.C. § 523(a)(5).
Much judicial energy has been spent in attempting to decide whether or not a given obligation arising from a prepetition marital rela-

tionship is dischargeable. In fact, there are no less than 19 reported Court of Appeals decisions construing obligations under § 523(a)(5). *Jenkins v. Jenkins (In re Jenkins)*, 94 B.R. 355, 359 n. 4 (Bankr.E.D.Pa.1988). It has been stated that in bankruptcy "it is more important that the applicable law be settled than that it be settled right." *In re Jenkins*, 94 B.R. at 359 (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406, 52 S.Ct. 443, 447, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)). Obviously, neither Congress nor the judicial system has yet been able to effectuate this principle with regard to the issues addressed in § 523(a)(5). *In re Jenkins*, 94 B.R. at 359. Fortunately, most courts have resisted the temptation to utilize § 523(a)(5) as a source of federal domestic relations law. *In re Jenkins*, 94 B.R. at 359.
However, it should be noted that on June 28, 1990, H.R. 5203 was introduced by Representative Henry Hyde of Illinois. The bill suggests amending § 523(a)(5) to provide specifically that a debt to a spouse, former spouse or child for any liability under the terms of a property settlement in connection with a separation agreement or divorce decree is non-dischargeable. The bill died in committee but it is expected to be reintroduced. *See* Judith K. Fitzgerald, United States Bankruptcy Judge for the Western District of

burden of proof is on the party challenging discharge to prove by a preponderance of the evidence that the debt should be declared non-dischargeable. *Bulman v. Bulman (In re Bulman)*, 123 B.R. 24, 26 (Bankr.E.D.Va. 1990). *See also* Fed.R.Bankr.P. 4005.[4]

■ In the context of a voluntarily executed marital settlement, the test for whether the payments are "actually in the nature of alimony, maintenance, or support" is whether it was the *parties' intention* that the payments be for support rather than for property settlement. *In re Long*, 794 F.2d 928, 931 (4th Cir.1986); *Tilley v. Jessee*, 789

F.2d 1074, 1077 (4th Cir.1986); *Melichar v. Ost*, 661 F.2d 300, 303 (1981). Although the Fourth Circuit has held that the intent of the parties controls rather than labels within an agreement, the written agreement is still "persuasive evidence of intent." *Tilley v. Jessee*, 789 F.2d at 1077.[5]

In *Tilley*, the spouse challenging discharge was faced with a written agreement that was clearly and unambiguously a property settlement. *Tilley*, 789 F.2d at 1078. In light of this factor the court found the written agreement "erected a substantial obstacle which

---

Pennsylvania & Ramona M. Arena, *Wrestling with Bankruptcy and Divorce Laws in Property Division and Support Issues*, 6 Am.J.Fam.L. 109, 131 (1992) (citing H.R. 5203, 101st Cong., 2d Sess., 136 Cong.Rec. H4403 (1990)).

**4.** However, two commentators suggest reasons why § 523(a)(5) issues, unlike other § 523 issues, may warrant re-examining who should bear the burden of proof between the debtor and non-debtor spouse:

> The Supreme Court of the United States articulated long ago that the fresh start provided under the bankruptcy laws should be subordinated to the duty of support.... [*Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904); *Dunbar v. Dunbar*, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084 (1903) ] ... There is nothing in the legislative history that indicates an intent to change these pronouncements. The bankruptcy laws were designed for the protection of debtors oppressed by financial overextension. They were not created to undo or substitute for a state court's determination of the allocation of marital resources or to permit a debtor to be unjustly enriched by the discharge of his obligations to his ex-spouse which were created by, and the result of, the marriage and its dissolution. A non-debtor spouse is not in the same position as are creditors of the debtor. The spouse lent no money, did not contract for credit and incurred no debt to the debtor. The nondebtor spouse's involvement in the bankruptcy comes about not because of a debtor-creditor relationship but because of the marriage.

> *See* Judith K. Fitzgerald, United States Bankruptcy Judge for the Western District of Pennsylvania & Ramona M. Arena, *Wrestling with Bankruptcy and Divorce Laws in Property Division and Support Issues*, 6 Am.J.Fam.L. 109, 116–17 (1992); *see also* John Francis Murphy, *The Dischargeability in Bankruptcy of Debts for Alimony and Property Settlements Arising from Divorce*, 14 Pepp. L.Rev. 69, 78–79 (1986). Although the law clearly places the burden of proof on the non-debtor spouse, the preceding discussion supports my view that if the intent of the parties can be ascertained from clear, unam-

biguous, and unequivocal language in a written agreement, that intent should generally be given effect in bankruptcy.

**5.** Several courts and commentators have addressed the "intent of the parties" test and have concluded that clear, unambiguous, and unequivocal language of intent in a written agreement should be given full force and effect in bankruptcy. *See Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986); *Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir.1982); *Clark v. Clark (In re Clark)*, 113 B.R. 797, 800–01 (S.D.Ga.1990); *Gebhardt v. Gebhardt (In re Gebhardt)*, 53 B.R. 113, 115 (W.D.Mo.1985); *cf. Alloway v. Alloway (In re Alloway)*, 37 B.R. 420, 425 (Bankr.E.D.Pa. 1984); Sheryl L. Scheible, *Bankruptcy and the Modification of Support: Fresh Start, Head Start, or False Start?*, 69 N.C.L.Rev. 577, 637 (1991); John Francis Murphy, *The Dischargeability in Bankruptcy of Debts for Alimony and Property Settlements Arising from Divorce*, 14 Pepp.L.Rev. 69, 79 (1986); *but see Calhoun v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983); *Tsanos v. Bell (In re Bell)*, 47 B.R. 284 (Bankr.E.D.N.Y. 1985).

Although bankruptcy courts consider extrinsic evidence in addition to the parties' written agreement, it has not been entrusted to bankruptcy courts to actually determine the amount of alimony or support appropriate to the circumstances. It is for the state court to make that determination; bankruptcy courts determine only the nature of the obligation assessed by the state court. If the original state court award is excessive, or if the circumstances of the parties change, warranting adjustment of the obligation, it is for a state court to make these determinations. A more expansive role exceeds congressional intent, differs from the longstanding approach under the former Act, undermines comity considerations and threatens to convert the bankruptcy forum into a federal domestic relations court. *Jenkins v. Jenkins (In re Jenkins)*, 94 B.R. 355, 360–61 (Bankr.E.D.Pa.1988); Sheryl L. Scheible, *Bankruptcy and the Modification of Support: Fresh Start, Head Start, or False Start?*, 69 N.C.L.Rev. 577, 632–37 (1991).

... [the non-debtor spouse] was required to overcome." *Tilley,* 789 F.2d at 1078.

■ The opposite is true in this case. That is, the agreement in this case clearly and unambiguously states that the intention of the parties was to provide for "alimony, maintenance, and support." Adherence to *Tilley* in this case compels the court to conclude that the clear and unambiguous language of intent in the agreement establishes a prima facie case that the debt owed Mrs. Catron is non-dischargeable. Furthermore, the strength and clarity of the agreement "erects a substantial obstacle" to the debtor's ability to rebut this prima facie case. *Tilley,* 789 F.2d at 1078. Notwithstanding this conclusion the court has afforded the debtor an ample opportunity to rebut or explain the language in the agreement.

■ In determining the parties' mutual intent, the court must look to all the relevant evidence on the intent of the parties. The court has listened to all the evidence the parties have offered on intent and has developed a full record in this case. In sum, the court sees nothing in the evidence which supports a finding that the "parties mutually intended an obligation of any nature other than that expressed in their written agreement." *Tilley,* 789 F.2d at 1078. The agreement in this case clearly demonstrates the parties anticipated the possibility of bankruptcy and specifically contracted in light of the possibility of bankruptcy. This pre-bankruptcy planning should be given effect notwithstanding the debtor's seemingly disingenuous assertions after the fact that his intention was contrary to the plain language in the agreement.

Therefore, pursuant to 11 U.S.C. § 523(a)(5) the debt owed to the defendant is non-dischargeable, and the defendant is granted relief from the automatic stay.