In re Curtis R. CATRON, Debtor.

Curtis R. CATRON, Plaintiff,

v.

Nancy L. MORRISON, Defendant.

Bankruptcy No. 91–25827–T.
Adv. No. 93–2096–T.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

June 27, 1995.

---

W. Ware Morrison, Virginia Beach, VA, for Nancy L. Morrison.

Joseph T. Liberatore, Portsmouth, VA, for Curtis R. Catron.

### *MEMORANDUM OPINION*

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The court heard legal argument April 13, 1995, on Debtor Curtis Catron's complaint to determine whether a debt is dischargeable or whether it is excepted from discharge pursuant to 11 U.S.C. § 523(a)(5). The court took the matter under advisement. After hearing the respective arguments of counsel and after reviewing the material submitted by counsel, the court finds that the debt at issue is in the nature of support. Accordingly, the court will enter an order excepting the debt from discharge.

### *Findings of Fact*

Debtor and Defendant Nancy L. Morrison were married for twenty-six years. Morrison did not work outside the home for a majority of their marriage because debtor had significant real estate investments and because debtor ran a successful insurance agency. The evidence conclusively establishes that he had access to significant resources which allowed the couple to live a lavish life-style during the course of their marriage.

In May 1989 debtor and Morrison separated whereafter they executed a Final and Permanent Separation, Support, and Property Settlement Agreement dated July 30, 1990. This settlement agreement was incorporated into the Final Decree of Divorce entered by the Circuit Court of Virginia Beach, Virginia, on August 21, 1990, and is the critical document in the resolution of this case.

On October 17, 1991, debtor filed a chapter 11 petition. At the time of filing, the obligations owing from debtor to Morrison were all derived from the settlement agreement. These obligations included:

Under paragraph 2, lump sum payments of $300,000.00 each on the following dates: (1) July 1, 1985; (2) July 1, 2000; (3) and July 1, 2005.

Under paragraph 4, "the court from time to time, after considering the financial resource of both parties, may order a party to pay a reasonable amount for the costs to the other party of maintaining or defending any proceeding involving arrearages or to enforce compliance herewith and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment or decree, and that the Court may order that the amount be paid directly to the attorney who may enforce the order in his own name."

Under paragraph 7, debtor "assumes and covenants and agrees to pay as the same mature and indemnify and hold wife harmless from and against all loss on account of all joint obligations of the parties to banks and other institutional lenders incurred therefore relative to his business or investments, including closely held corporations and partnerships, except for obligation to be paid from the sales proceeds of the marital residence at closing but in event the sales proceeds are insufficient to pay such obligations Husband shall be respon-

sible for such obligations and shall hold wife harmless for same."

Under paragraph 10, debtor agreed to maintain life insurance on his life for the benefit of Morrison in an amount sufficient to fund the commuted value of the lump sum and periodic payments noted in paragraphs a and b above.

Under paragraph 11, debtor owes Morrison $29,290.00 plus interest for the date of a confession of judgment note which represented the balance due to Morrison from debtor's obligation under the settlement agreement to pay Morrison $300,000.00 at the time of the sale, foreclosure sale, or any other transfer or disposition of title to the marital residence. Debtor purchased the home from Morrison on November 30, 1990, and upon closing paid $150,000.00 to Morrison. In addition, debtor executed a note to pay Morrison $150,000.00 in March of 1991 and secured the note with a deed of trust on property owned by debtor. Debtor defaulted on the payment and Morrison foreclosed upon the property purchasing it at foreclosure for $100,000.00. The deficiency balance was eventually reduced to $29,290.00 as represented in the confession of judgment note.

On December 3, 1991, debtor filed a complaint (APN No. 91–2317–T) to determine dischargeability of debt owed to Morrison under paragraph 2 of the settlement agreement which provides that debtor shall make lump sum payments of $300,000.00 each to Morrison on three separate dates.

On September 23, 1992, this court held that the debt was nondischargeable. This holding was affirmed by the United States District Court for the Eastern District of Virginia and the Fourth Circuit Court of Appeals.

After Morrison attempted to collect in state court debts that were not explicitly held nondischargeable by this court's order, debtor filed a second complaint seeking an order determining that his obligations under other paragraphs of the settlement agreement were not in the nature of support and were therefore dischargeable.

The parties have stipulated that the pleadings, order, opinions, and entire record of Adversary Proceeding Number 91–2317–T is admissible evidence in this pending adversary proceeding.

The parties have also stipulated that the following debts are nondischargeable: (1) debtor's obligation to reimburse Morrison for attorneys' fees and costs of divorce counsel; (2) debtor's obligation arising from the confessed judgment note dated July 12, 1991, in the principal amount of $29,290.00, and (3) debtor's obligation to provide life insurance for the benefit of Morrison.

Accordingly, the provision that contains the language addressing the crux of this adversary proceeding is paragraph 7 which provides in pertinent part:

Neither party, after the date of their last separation, has pledged or shall pledge the credit of the other, and each party shall pay his or her own separate debts incurred thereafter. Husband hereby assumes and covenants and agrees to pay as the same mature and indemnify and hold Wife harmless from and against all loss on account of all joint obligations of the parties to banks and other institutional lenders incurred theretofore relative to his business or investments, including closely held corporations and partnerships, except for the obligations to be paid from the sales proceeds of the marital residence at closing but in event the sales proceeds are insufficient to pay such obligations Husband shall be responsible for such obligations and shall hold wife harmless for same.

The debt at issue under the hold harmless clause is a debt to Signet Bank incurred by debtor for business reasons and personally guaranteed by Morrison.

The agreement also contains the following specific language:

The parties mutually covenant, represent, warrant, and agree that it is their *mutual intent* and bargain, which goes to the very essence of this entire agreement, that the monetary payments, obligations, and liabilities assumed and set forth herein for the benefit of the parties, respectively, includ-

ing *spousal support, ... shall be considered, for the purposes of federal bankruptcy law, exempt from discharge and nondischargeable in bankruptcy as debts to a spouse* or former spouse of the obligor, for alimony to, maintenance for, or support of a spouse or former spouse as *being in the nature of alimony, maintenance or support* as the debts, liabilities and obligations created by this agreement are *intended for economic security,* after considering many facts, circumstances and factors. . . .

(emphasis added).[1]

### Position of Parties

Debtor alleges that Morrison is precluded from litigating the issue of whether the hold harmless provision is in the nature of support because a judge in the Juvenile and Domestic Court of the City of Virginia Beach, Virginia, determined that the court did not have jurisdiction to hear a matter relating to the hold harmless clause because it was not support.

Debtor also claims that the hold harmless clause was a property settlement in spite of the clear language of the agreement. Debtor argues that the court, as a threshold matter, must determine whether the parties intended that the obligation was in the nature of alimony and support. If the issue is resolved in the affirmative, debtor argues that the court must then find that the provision was actually in the nature of alimony and support. Debtor asserts that the "spousal support" language in the agreement is merely a label for what is actually a property settlement.

Debtor testified that he never intended to pay spousal support. Debtor cites his belief that he had a solid adultery case against Morrison in state court as evidence of his lack of intent to pay spousal support. However, the testimony of the debtor's divorce lawyer, Mr. Grover C. Wright, Jr., raised serious doubt as to the strength of the debtor's adultery case. In fact, Mr. Wright expressed concern that Morrison may have been able to establish a credible countercharge of adultery.

Morrison alleges that debtor is barred by the doctrine of res judicata from arguing that the debt is discharged. Morrison argues that in Adversary Proceeding Number 91–2317–T, she filed a counterclaim asserting that the debt in issue in this adversary proceeding was nondischargeable. Furthermore, Morrison asserts that debtor never defended this allegation and merely defended one provision of the settlement agreement. In addressing the merits of debtor's claim, Morrison relies on the strong language in the agreement to resist the discharge of the debt owed her. She asserts the agreement establishes a prima facie case that the debt is nondischargeable, which has not been rebutted by debtor.

### Discussion and Conclusions of Law

■ Debtor claims that Morrison is collaterally estopped from arguing that the hold harmless provision is in the nature of alimony and support. This contention is based upon the decision of the Juvenile and Domestic Relation Court of Virginia Beach that the hold harmless provision was not the type of obligation which was within its limited jurisdiction.[2] The state court determined that the hold harmless clause was not under the category of spousal support within its jurisdiction.

■ Collateral estoppel, or issue preclusion, applies when a second action between the same parties is based upon the same facts but a different cause of action. *See* 50 C.J.S. *Judgments* § 706, pp. 163–64 n. 92 (1947). Under collateral estoppel, the prior

1. The agreement also recites the factors taken into consideration for awarding spousal support pursuant to Va.Code Ann. § 20–107.1 (Michie Supp.1994). In addition, the agreement contains an integration clause, and the document clearly reflects the parties considered the possibility of bankruptcy.

2. Pursuant to Va.Code Ann. 16.1–241(L), the judges of the Juvenile and Domestic Relations District Court have jurisdiction over:

Any person who seeks spousal support after having separated from his or her spouse. A decision under this subdivision shall not be res judicata in any subsequent action for spousal support in a circuit court. A circuit court shall have concurrent original jurisdiction in all causes of action under this subdivision.

Va.Code Ann. § 16.1–241(L) (Michie Supp.1994).

judgment "precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *see also Combs v. Richardson*, 838 F.2d 112, 112 (4th Cir.1988).

� The requirements for collateral estoppel are:

(1) the parties to the prior and subsequent proceedings, or their privies, must be the same,

(2) the factual issue sought to be litigated actually must have been litigated in the prior action,

(3) the factual issue must have been essential to the judgment in the prior proceeding, and

(4) the prior action must have resulted in a judgment that is valid, final, and against the party against whom the doctrine is sought to be applied.

*See Angstadt v. Atlantic Mut. Ins. Co.*, 249 Va. 444, 457 S.E.2d 86, 87 (1995).[3] The court must "make a careful and considered determination" before concluding that an issue was actually litigated and necessary to the judgment. *Combs*, 838 F.2d at 116. Furthermore, a litigant's right to a full and fair opportunity to litigate his claims overrides the interest of judicial economy. *Ritter v. Mt. St. Mary's College*, 814 F.2d 986, 994 (4th Cir.), *cert. denied*, 484 U.S. 913, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987).

�The requirement A full evidentiary hearing is not necessarily a prerequisite for an issue to be "actually litigated." *See In re Grimm*, 168 B.R. 102, 112 (Bankr.E.D.Va.1994). However, the court finds that the issue of whether the hold harmless clause was in the *nature* of alimony and support was not actually litigated. The state court's decision was made at the end of counsels' opening arguments and before any evidence had been presented to the court. There was no evidence presented on the actual function of the hold harmless

provision, on the intent of the parties, or on whether the hold harmless provision was actually in the nature of alimony. In fact, neither party presented any evidence on the factors a bankruptcy court examines to determine whether a debt is excepted from discharge pursuant to § 523(a)(5). The state court decision was merely a determination that the hold harmless provision did not fall within the limited definition of support used by the court to establish its jurisdiction.

Although "a tribunal always possesses jurisdiction to determine its jurisdiction, and any fact upon which that decision is grounded *may* serve as the basis for an estoppel by judgment in any later action[,]" *see Roth v. McAllister, Bros., Inc.*, 316 F.2d 143, 145 (2nd Cir.1963) (emphasis added), the facts of this case do not warrant applying the equitable doctrine of collateral estoppel.[4]

Unlike the *Roth* case, Morrison is not attempting to change the position she asserted in state court, nor is she trying to establish jurisdiction where jurisdiction was previously denied. *See Cutler v. Hayes*, 818 F.2d 879, 888 n. 72 (D.C.Cir.1987) (applying estoppel on standing issue based on previous judgment holding movant lacked standing); *Shaw v. Merritt–Chapman & Scott, Corp.*, 554 F.2d 786, 789 (6th Cir.) (applying estoppel on jurisdiction issue based on previous judgment holding lack of jurisdiction), *cert. denied*, 434 U.S. 852, 98 S.Ct. 167, 54 L.Ed.2d 122 (1977). Even under such circumstances, "... the great sensitivity that surrounds matters of subject matter jurisdiction is likely to limit the application of preclusion on such issues." 18 Charles A. Wright et al., Federal Practice and Procedure § 4436, p. 273 (Supp.1995).

Morrison merely desires an opportunity to litigate whether the hold harmless clause is in the nature of alimony, an issue which has not been previously litigated. Accordingly, the court finds that Morrison is not preclud-

---

**3.** Pursuant to 28 U.S.C. § 1738 the court must apply the forum state's law of collateral estoppel. *See also Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982).

**4.** "Ordinarily, issue preclusion takes the form of a direct estoppel against a second effort to assert the same basis of jurisdiction for the same claim." 18 Charles A. Wright et al., Federal Practice and Procedure § 4436, pp. 340–41 (1981).

ed by collateral estoppel, and the court may address the merits of her claim.[5]

■ Under § 523(a)(5) of the Bankruptcy Code which was in effect at the time this bankruptcy case was filed, debts for alimony, maintenance, or support are not dischargeable to the extent that they are "actually in the nature of alimony, support or maintenance."[6] The burden of proof is on Morrison to prove by a preponderance of the evidence that the debt should be declared nondischargeable. *See Bulman v. Bulman (In re Bulman)*, 123 B.R. 24, 26 (Bankr.E.D.Va. 1990); Fed.R.Bankr.P. 4005.

■ In the first dischargeability action between these same parties, this court examined the voluntarily executed marital settlement agreement, which is also at issue in the present case, to determine whether it was the *parties' intention* that payments were for support rather than for property settlement. *See Catron v. Catron (In re Catron)*, 164 B.R. 908, 910–12 (Bankr.E.D.Va.1992), *aff'd*, 164 B.R. 912 (E.D.Va.), *aff'd without op.*, 43 F.3d 1465 (4th Cir.1994).

The court determined that "[a]lthough the Fourth Circuit has held that the intent of the parties controls rather than labels within an agreement, the written agreement is still 'persuasive evidence of intent.'" *In re Catron*, 164 B.R. at 911 (quoting *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986)). In the case of *In re Catron*, this court relied heavily on the Fourth Circuit's holding in *Tilley*, 789 F.2d at 1077–78, which held that a written agreement that was clearly and unambiguously a property settlement "erected

a substantial obstacle which ... [the non-debtor spouse] was required to overcome."

Furthermore, in the first *Catron* action, this court held that:

the agreement in this case clearly and unambiguously states that the intention of the parties was to provide for "alimony, maintenance, and support." Adherence to *Tilley* in this case compels the court to conclude that the clear and unambiguous language of intent in the agreement establishes a prima facie case that the debt owed Mrs. Catron is non-dischargeable. Furthermore, the strength and clarity of the agreement "erects a substantial obstacle" to the debtor's ability to rebut this prima facie case. *Tilley*, 789 F.2d at 1078. Notwithstanding this conclusion the court has afforded the debtor an ample opportunity to rebut or explain the language in the agreement.

In determining the parties' mutual intent, the court must look to all the relevant evidence on the intent of the parties. The court has listened to all the evidence the parties have offered on intent and has developed a full record in this case. In sum, the court sees nothing in the evidence which supports a finding that the "parties mutually intended an obligation of any nature other than that expressed in their written agreement." *Tilley*, 789 F.2d at 1078. The agreement in this case clearly demonstrates the parties anticipated the possibility of bankruptcy and specifically contracted in light of the possibility of bankruptcy. This pre-bankruptcy plan-

---

**5.** Debtor's contention that this action is barred by res judicata is meritless. *See Gregory v. Mitchell*, 634 F.2d 205 (5th Cir.1981) (holding res judicata does not apply where judgment in prior case covered standing issue and not decision on merits).

**6.** The code, at 11 U.S.C. § 523(a)(5), provides in pertinent part:
    (a) A discharge under ... this title does not discharge an individual debtor from any debt—
    . . . .
    (5) to a spouse, [or] former spouse ... for alimony to, maintenance for, or support of such spouse ..., in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with state or territorial

law by a governmental unit, or property settlement agreement, but not to the extent that—
    . . . .
    (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .
11 U.S.C. § 523(a)(5).
    The Bankruptcy Reform Act of 1994 has amended § 523. However, for issues under § 523 and most other matters, the act applies prospectively to cases filed after the effective date of October 22, 1994. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702(a) (codified as amended in 11 U.S.C.).

ning should be given effect notwithstanding the debtor's seemingly disingenuous assertions after the fact that his intention was contrary to the plain language in the agreement.

*In re Catron,* 164 B.R. at 912.

The parties have stipulated that the pleadings, order, opinions, and entire record of Adversary Proceeding Number 91–2317–T is admissible evidence in this pending adversary proceeding. In fact, except for the transcript of the hearing before the Juvenile and Domestic Relation Court of Virginia Beach, the court has received no additional evidence in this adversary proceeding. Although there is some evidence from which the court could infer that the hold harmless clause was a property settlement, I find that it is clear from the unequivocal language of the settlement agreement that the parties intended that the hold harmless clause was in the nature of support.

■ Debtor argues that intent is merely a threshold issue; debtor claims that the court must not only find that the parties intended that the hold harmless clause was in the nature of support but the court must also determine that the hold harmless clause was *actually* in the nature of support. In support of this proposition, debtor cites the unpublished opinion [7] in *Catron v. Catron (In re Catron),* No. 94–1279, 1994 WL 707966 (4th Cir. December 21, 1994) and *Tilley,* 789 F.2d at 1077 n. 2. Contrary to the implication of debtor's assertion, the Fourth Circuit has not held that a court must find more than that the parties intended the debt to be in the nature of support.

■ In *Tilley,* the Fourth Circuit listed nonintent factors that *could* be considered. *See Tilley* 789 F.2d at 1077 n. 2 (emphasis added). The Fourth Circuit's holding in *In re Catron* mirrors its prior determination in

*Tilley,* that is, the court *may also* consider other nonintent factors to determine whether the debt is in the nature of support.

These factors include: (1) the actual language of the agreement, (2) the financial situation of the parties at the time of the agreement, including their prospects for future income, (3) the function served by the obligation at the time of the agreement, and (4) whether there is any evidence of overbearing at the time of the agreement that might make a court question the intent of the spouse. *See In re Catron,* 164 B.R. 912, 919 (E.D.Va.1994).

This court has already concluded that the actual language of the agreement unequivocally demonstrates that the debt is in the nature of support. The nonintent factors in this case further support the court's conclusion.

In considering the financial situation of the parties at the time of the agreement, it is evident that Morrison had no income or savings, and that her career prospects were bleak. She had not worked outside the home for over twenty-seven years, and had only a high school diploma.

Furthermore, the function served by the hold harmless clause at the time of the settlement agreement demonstrates that the debt is support. Debtor argues that because debtor was to pay his business debts from the proceeds of the sale of the marital home, as provided for in the settlement agreement, the hold harmless clause was a property settlement. The court, in the previous adversary proceeding, determined that the $2,500.00 monthly payments and the amortized $300,000.00 lump sum payments resulted in a monthly support amount of $7,500.00, which represented the amount Morrison needed to provide the daily necessities she was accustomed to having in her life.[8] It is,

---

7. Because of the similarities of parties and issues with the current case and the previous *Catron* matter, the court will consider debtor's argument even though Fourth Circuit I.O.P. 36.6 states that "the citation of unpublished dispositions is disfavored...."

8. The court recognizes that this amount appears excessive. However, as I have previously stated,

[a]lthough bankruptcy courts consider extrinsic evidence in addition to the parties' written agreement, it has not been entrusted to bankruptcy courts to actually determine the amount of alimony or support appropriate to the circumstances. It is for the state court to make that determination; bankruptcy courts determine only the nature of the obligation assessed by the state court. If the original state court

therefore, logical that the parties executed the hold harmless clause to insure that Morrison could use this money for her daily necessities rather than having to pay debtor's financial obligations arising from his business.[9]

Although there is a substantial amount of evidence of the animosity between debtor and Morrison, there is no evidence that debtor was overborne when he signed the settlement agreement.

■ The court recognizes that the alimony obligation is different from the typical support provision. However, the court could not find, nor did debtor cite, any authority holding that an atypical support provision is conclusive evidence of a property settlement. In the court's view, support is a personal matter which will be tailored to the needs of the parties. Thus, it is important to consider the parties' intent. Based on the unequivocal language of the settlement agreement, the financial situation of the parties, the function served by the obligation, and no evidence of excessive coercion, the court determines that the hold harmless clause is in the nature of support which is excepted from discharge pursuant to § 523.

Morrison alleges that debtor is barred by the doctrine of res judicata from arguing that the debt under the hold harmless clause is discharged. The court does not need to address this issue because the debt at issue has been determined to be excepted from discharge pursuant to § 523(a)(5). *See Rosenblatt v. Wittlin (In re Rosenblatt)*, 176 B.R. 76, 80 (Bankr.S.D.Fla.1994).

A separate order will be entered.

---

award is excessive, or if the circumstances of the parties change, warranting adjustment of the obligation, it is for a state court to make these determinations. A more expansive role exceeds congressional intent, differs from the longstanding approach under the former Act, undermines comity considerations and threatens to convert the bankruptcy forum into a federal domestic relations court.
*In re Catron*, 164 B.R. at 911 n. 5; *see also Jenkins v. Jenkins (In re Jenkins)*, 94 B.R. 355,

360–61 (Bankr.E.D.Pa.1988); Sheryl L. Scheible, *Bankruptcy and the Modification of Support: Fresh Start, Head Start, or False Start?*, 69 N.C.L.Rev. 577, 632–37 (1991).

9. This case differs from the case involving a joint debt incurred to purchase marital property. Arguably, under those facts the function served by the obligation would appear to be in the nature of a property settlement.