**In re Ervin Randall POOLE, Debtor.**

**C/A No. 07–03093–HB.**

United States Bankruptcy Court,
D. South Carolina.

Oct. 18, 2007.

Sidney Wike, Greenville, SC, Debtor.

## ORDER

HELEN E. BURRIS, Bankruptcy Judge.

This matter comes before the Court pursuant to the Objection of creditor Judy

Ann Poole to confirmation of the plan of Debtor and ex-spouse Ervin Randall Poole. The issue presented in this case is whether Debtor's obligation to pay Ms. Poole under the parties' divorce decree constitutes a "domestic support obligation" as defined by 11 U.S.C. § 101(14)(A).[1] If it does, confirmation of the plan pursuant to § 1325 must be denied as the plan does not provide for payment in full of the obligation as required by § 1322(a)(2).

### Findings of Fact

1. The parties were married on May 3, 2003.

2. On April 19, 2006, the Family Court issued a temporary order for separation providing, among other things, that Ms. Poole would have possession of the marital home, that neither party could incur debts in the name of the other, and that Mr. Poole shall pay the sum of $1072.00 per month to Ms. Poole "as a contribution towards debt incurred during the course of the marriage."

3. On March 14, 2007, a divorce decree was filed in the Family Court replacing the temporary order. The divorce decree granted a divorce to Ms. Poole based on one year's separation, and incorporated a settlement agreement between the parties.

4. Mr. Poole was not represented by counsel at the final hearing. Ms. Poole was represented by attorney Bobby H. Mann, Jr.

5. The provisions of the agreement divided certain assets, including real estate, and also included the following provisions in controversy: (a) "Mr. Poole shall continue to pay [the] Chase account[s].... Mr. Poole shall hold Ms. Poole harmless from all liability associated with these debts"; (b) "Mr. Poole shall pay one-half of Ms. Poole's attorney's fees through the office of Bobby H. Mann, Jr., in the amount of $1,683.00 to be paid at the rate of $50.00 per month"; and (c) "Mr. Poole will execute a note for $70,000 at an interest rate 6.50% in favor of Ms. Poole. His payments shall be $500.00 per month until paid in full...."

6. The brief transcript of the hearing resulting in the divorce decree was presented into evidence. The transcript included the following statements by Ms. Poole's counsel, Bobby H. Mann, Jr., to the Family Court judge: "This is a marriage of very short duration. No children. Basically, it was an allocation of debt. There is some property you will see, but they have personal items. It is mainly a debt allocation case."

7. The transcript indicates that both parties testified in the Family Court that the agreement was voluntary and they agreed it was fair.

8. Ms. Poole testified in the Family Court that the $70,000 note was a result of money borrowed against a home that Ms. Poole owned prior to the marriage. The divorce decree provides that Ms. Poole will have possession of the home and pay any mortgage directly.

9. Mr. Poole executed a generic note to Ms. Poole dated March 1, 2007, in the amount of $70,000, bearing interest at the rate of 6.5%, with payments of $500 per month commencing on March 15, 2007, and continuing until paid in full.

10. Mr. Poole filed for Chapter 13 bankruptcy relief on June 6, 2007.

11. Ms. Poole has filed a Proof of Claim in this case in the amount of $93,282, claimed as a priority domestic support obligation and attaching a copy of the divorce decree. That claim was filed on August 7, 2007. The Court's docket does

---

1. Further references to the Bankruptcy Code shall be by section number only.

not indicate an objection to that claim filed by Mr. Poole nor any other party in interest. No party has filed an adversary proceeding to determine the dischargeability of the debt in question.

12. Although the Chapter 13 plan does not specifically mention any payment of a domestic support obligation, Mr. Poole did list Ms. Poole as a creditor and filed a plan proposing to pay 100% of the balance of the Chase accounts. However, the plan only proposes a 2% dividend to general unsecured creditors.[2] Apparently, it is Mr. Poole's intention to include the $70,000 note and the attorney's fees within this group of creditors.

13. At the confirmation hearing, Ms. Poole testified regarding the debts incurred in the marriage and the intent of the parties in entering into the agreement. She testified that the purpose of the $500 payment pursuant the note from Mr. Poole was "so that she could stay in her house." She testified that Mr. Poole made the payment for three months and was three months in arrears at the time of the hearing. She testified that at the time of her marriage, she owed $38,000 on her house, but that by the time she was divorced, the total debt was $124, 000. She further testified that Mr. Poole brought $41,000 in debt to the marriage and they took out a second mortgage in August of 2003 to pay that debt. However, on cross examination she admitted that part of these funds was used for repainting the house, purchasing a car and for a honeymoon for the couple. She testified that her house was currently under contract because she suspected that her ex-husband would not pay. Also, her son had stopped helping her with the house payments and she could no longer afford to keep the house. She testified

that the payment was approximately $800 per month.

14. Regarding credit card debt, Ms. Poole testified that her credit card debt increased during the marriage. She testified that the total of the Chase debt was approximately $25,000 at the time of the divorce decree. She testified that Mr. Poole earned very little during the marriage and estimated that his highest annual gross income during the marriage was $14,600 with periods of unemployment. She testified that she makes approximately $27,500 gross per year.

15. She testified that Mr. Poole owed approximately $39,900 in child support to a former spouse during the marriage and that she supplemented this payment from her income.

16. She testified that payment of the debts in question were critical to her ability to maintain a home and household and that was the reason such obligations were imposed on Mr. Poole in the divorce decree.

17. Contrary to Ms. Poole's statement, Mr. Poole testified that his total debt prior to the marriage was less than $7000 plus the final year of payments on his car. He estimated the total to be $10, 000.

18. Mr. Poole testified that he is currently paying the Chase credit cards because he feels that he helped incur the debt and is responsible for it.

19. Mr. Poole testified that he signed the $70,000 promissory note because he could not afford an attorney to fight and wanted to make it as easy for his wife as possible because he hoped to reconcile with her. When challenged and asked directly whether the $500 payment was to allow Ms. Poole to stay in the house, he answered "at the end of the day, yes."

---

**2.** Debtor filed an amended plan on September 17, 2007 which alters these terms slightly.

The amendments do not directly impact this Order

20. At the time of the divorce decree, Mr. Poole disclosed a monthly gross income of $2000 in documents filed with the Family Court.

21. Mr. Poole testified that during the Family Court proceedings, no one mentioned to him that he was obligated to pay any alimony.

22. He testified that he contacted a bankruptcy attorney in March or April of 2007 when he found out that medical bills incurred due to an accident would not be paid by his Veterans' coverage.

23. In support of her allegation that the plan was not filed in good faith, Ms. Poole testified that Mr. Poole had previously filed bankruptcy shortly after a prior divorce.

### Discussion and Conclusions of Law

Ms. Poole objected to the plan stating that all three obligations are domestic support obligations as defined by § 101(14A), are entitled to full priority under § 507(a)(1)(A) and are non-dischargeable pursuant to § 523(a)(5).[3] Ms. Poole therefore asserts that the plan cannot be confirmed as it does not provide for payment in fill of a domestic support obligation as required by § 1325(a)(1) and § 1322(a)(2). Ms. Poole also raised limited objections to the plan based on allegations of bad faith pursuant to § 1325(a)(3).

### I. *Allegations of bad faith*

 The only evidence presented of any bad faith was the fact that the bankruptcy was filed shortly after entry of the divorce decree and that the Debtor had previously filed bankruptcy. Mr. Poole countered with testimony indicating that he filed at that time due to medical bills from an accident. Without further evidence of a lack of good faith on his part and after considering the contents of the plan (which currently includes a provision to pay a portion of the debt at issue herein) and his testimony, the Court cannot find that there is any reason to conclude that the Debtor is not proceeding in good faith.

### II. *Treatment of the claims of Ms. Poole in the Chapter 13 plan*

Section 1322(a)(2) requires payment through a Chapter 13 plan of all claims entitled to priority under § 507. Sub-sections 507(a)(1)(A) and (B) allow a priority claim for domestic support obligations. Ms. Poole objects to the plan as it fails to treat her claims as priority debts.

Pursuant to § 101(14A), the term "domestic support obligation" means:

[A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

---

**3.** While Ms. Poole has cited as part of her authority § 523(a)(5) relating to the dischargeability of the debt in question in a Chapter 13 proceeding, the direct issue of whether the debt is dischargeable pursuant to this or any other section of the Code is not property before the Court at this time as no adversary proceeding has been filed pursuant to Fed. R. Bankr.P. 7001. Further, any such determination may be completely unnecessary as § 523(a)(5) exceptions to discharge in Chapter 13 proceedings affect only discharges under § 1328(b) (the "hardship discharge"). However, the case law governing this section is helpful in determining whether the debt in question is in the nature of alimony, maintenance and support and thus a "domestic support obligation" as discussed herein.

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

This definition was enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and has an impact throughout the Bankruptcy Code. The text of the definition is somewhat similar to the text of the former § 523(a)(5). The lengthy text of that subsection, which contained an exception to certain discharges available to a debtor under the Bankruptcy Code, was replaced by the BAPCPA with a simple exception for "a domestic support obligation," requiring reference to § 101(14A) above. As the language of the former exception and new definition are similar, the pre-BAPCPA case law applicable to § 523(a)(5) is helpful in determining if a debt fits within the definition of a "domestic support obligation."

## A. Debts owed primarily to third parties

The new definition of a "domestic support obligation" provides that the debt in question must be "owed to or recoverable by" one of the parties enumerated in that section, including a former spouse. This language is different from former § 523(a)(5), which simply provided an exception to discharge for "any debt to a spouse, former spouse or child of the debtor" that met certain other criteria. Decisions under former § 523(a)(5) allow the inclusion of debts to third parties that were in the nature of alimony or support in certain circumstances. *See Baker v. Baker* (*In re Baker*), 274 B.R. 176, 188 (Bankr. D.S.C.2000); *Holliday v. Kline* (*In re Kline*), 65 F.3d 749, 750–51 (8th Cir.1995).

Since the language of the new definition includes debts "owed to or *recoverable by*" a spouse, debts to be paid directly to third parties such as the attorney's fees and credit card payments would not necessarily be excluded if they are enforceable and recoverable by the spouse via further proceedings in the Family Court. *See Swentor v. Swentor,* 336 S.C. 472, 479, 520 S.E.2d 330, 334 (1999) (citing *Moseley v. Mosier,* 279 S.C. 348, 353, 306 S.E.2d 624, 627 (1983)). Also, the hold harmless provision relating to the credit card debt creates a new obligation to Ms. Poole as a result of the divorce decree. *Schweitzer v. Schweitzer* (*In re Schweitzer*), 370 B.R. 145, 150–51 (Bankr.S.D.Ohio 2007) (citing *Owens v. Owens* (*In re Owens*), 191 B.R. 669, 673 (Bankr.E.D.Ky.1996)). While the new language may not be intended to expand the pool of creditors entitled to claim a debt as non-dischargeable, it certainly does not appear intended to narrow the field of payees when compared to the for-

mer language.[4]

## B. *Debts in the nature of alimony, maintenance and support*

■ To determine whether the debts in question are in the nature of alimony, maintenance or support, the court must look to federal law. *In re Davis,* No. 06–10581–DHW, 2007 WL 865683, at *2 (Bankr.M.D.Ala. Mar.15, 2007) (citing *In re Harrell,* 754 F.2d 902, 905 (11th Cir. 1985)). When deciding whether a debt should be characterized as one for support or property settlement, courts must consider whether the obligation was intended to be one for support. *Baker,* 274 B.R. at 188; *Tilley v. Jessee,* 789 F.2d 1074, 1077 (4th Cir.1986). *See also In re Fitzgerald,* No. 02–15275–W, slip op. at 5 (Bankr. D.S.C. Mar. 12, 2003).

■ Certain factors have been utilized as guidance to determine the nature of the obligation: (1) the substance and language of the document in question; (2) the financial condition of the parties at the time of the decree or agreement; (3) the function served by the obligation and intent of the parties at the time of the agreement; and (4) whether there is evidence to question the intent of a spouse or evidence of overbearing by either party. *Fitzgerald,* slip op. at 5. *See also Catron v. Catron (In re Catron* ), 164 B.R. 912, 919 (E.D.Va.1994), *aff'd,* 43 F.3d 1465, 1994 WL 707966 (4th Cir.1994); *Boyle v. Donovan,* 724 F.2d 681, 683 (8th Cir.1984) (citing *Williams v.*

*Williams (In re Williams* ), 703 F.2d 1055, 1057 (8th Cir., 1983)).

■ Specifically relating to agreements to hold an ex-spouse harmless and payments which relate to the allocation of debt, courts have held that such obligations can be in the nature of alimony, maintenance and support if the agreement itself expressly states that the obligation is in the nature of support. *See, e.g., Sledge v. Sledge (In re Sledge* ), 47 B.R. 349, 353 (E.D.Va.1981); *Catron v. Morrison (In re Catron* ), 186 B.R. 197, 205 (Bankr.E.D.Va. 1995); *Ferebee v. Ferebee (In re Ferebee* ), 129 B.R. 71, 74–75 (Bankr.E.D.Va.1991).

■ As mentioned above, courts have considered whether the obligation is fixed and non-modifiable, indicating a property settlement; however, the presence of this factor alone is not decisive. *See Kinder v. Kinder (In re Kinder* ), No. 02–10519–W, Adv. Pro. No. 02–80342, slip op. at 4 (Bankr.D.S.C. Feb. 10, 2003); *Fitzgerald,* slip op. at 7. Also, the court may examine whether the obligation allows the recipient to "maintain daily necessities." *Seybt v. Seybt (In re Seybt* ), No. 01–80128–W, 2002 WL 342346, at *2 (Bankr.D.S.C. Jan.14, 2002) (citing *Burton v. Burton (In re Burton* ), 242 B.R. 674, 679 (Bankr.W.D.Mo. 1999)).

## C. *Burden of Proof*

■ The Debtor bears the burden of proving that the plan meets all of the

---

**4.** The only other decisions found regarding this language are as follows: *Leo, Warren, P.C., v. Brooks (In re Brooks* ), 371 B.R. 761, 765–66 (Bankr.N.D.Tex.2007) (language " 'recoverable by'... is intended to further ability of 'a governmental unit' described in section 101(14A)(A)(ii) to pursue 'a domestic support obligation,' not to broaden the category of entities that may assert that debts owed to them are nondischargeable." Therefore, a creditor law firm cannot rely on this language to render the debt owed to it non-dischargea-

ble as between the debtor and that creditor); *In re Mupanduki,* No. 06–00541–JW, slip op. at 2 (Bankr.D.S.C. June 6, 2006) (in claim objection proceeding claim of domestic relations attorney was denied priority status as a domestic support obligation because the debt was not "owed to" or "recoverable by" any party within the definition. The attorney represented *the debtor* and asserted the claims on behalf of the attorney only. not a former spouse, child. etc.)

elements for confirmation found in § 1325. The reason for this is well stated in *Tillman v. Lombard,* 156 B.R. 156 (E.D.Va. 1993):

> So allocating the burden of proof is consistent with the scheme of § 1325. That section provides that "[t]he court shall confirm a plan if" certain conditions, including the good faith proposal requirement, are met. § 1325. "[I]rrespective of any objections to confirmation," section 1325 imposes on the bankruptcy court an independent "duty to insure compliance with the provisions of the Bankruptcy Code." *In re Bowles,* 48 B.R. 502, 505 & n. 3 (Bankr.E.D.Va. 1985). Therefore, the bankruptcy court is not a rubber stamp. It must scrutinize every proposed plan, regardless of whether someone objects. Thus, in ascertaining whether a Chapter 13 plan warrants confirmation, the bankruptcy court always and necessarily will turn to the debtor proposing the plan. The interposition of an objection to confirmation surely does not relieve the Chapter 13 debtor from the ordinary burden of proving the right to bankruptcy relief.

*Id.* at 159.

Further, in this case Ms. Poole has filed a timely proof of claim that has not been challenged by an objection thereto. Therefore, pursuant to Fed. R. Bankr.P. 3001(f), this claim constitutes "prima facie evidence of the validity and amount of the claim." Section 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." Any objection to a claim must be initiated pursuant to Fed. Rule Bankr.P. 3007, with 30 days notice of any hearing

thereon provided to the claimant and trustee. That procedure was not followed in this case to challenge the claim and its validity as a domestic support obligation. However, as neither the matter of procedure or timing of the challenge to the nature of the claim was raised by the claimant at the confirmation hearing, the Court will proceed with the merits of confirmation and will examine the classification of the claim as a domestic support obligation for the purposes of determining if Mr. Poole has met his burden of proof required by § 1325.[5]

### D. *The Law Applied to the Facts of this Case*

██ The agreement does not label or indicate any obligation as in the nature of alimony, maintenance or support. In Family Court, Ms. Poole's attorney stated that the agreement between the Pooles was a matter of debt allocation. The obligations are lump sum obligations payable over time and are not terminable upon any event. These facts weigh towards a finding that the debts are in the nature of a property/debt settlement rather than support obligations.

The evidence presented indicates that at the time of the decree and during the marriage Ms. Poole had stable gainful employment and generally earned more than Mr. Poole. Her testimony clearly indicated that she supplemented his lifestyle and financial obligations with her income. The record in the Family Court reveals that the reason for the $70,000 debt was to compensate Ms. Poole for a second mortgage, but gives little insight into the intent behind that compensation beyond mere allocation of debt. Ms. Poole testified in the

---

**5.** For the purposes of the claims record, it may still be necessary for such a claim to be challenged by objection, and the Court does not address the issue of the binding effect of any decision herein in any subsequent hearing on an objection to claim as that matter is not properly before the Court.

bankruptcy proceeding that the resulting stream of payments was intended to allow her to keep her home, and Mr. Poole agreed herein that "at the end of the day" this income stream certainly helped with this goal. However, nothing in the Family Court record evidences that the intent of that obligation as between Mr. and Mrs. Poole at the time it was created was to establish an award of alimony, maintenance or support to allow her to remain in her house or meet basic needs. She did testify in the bankruptcy proceeding that she needed the money to maintain her household, which is evidence of her intent. However, nothing in the Family Court record or divorce decree indicates this fact, and Mr. Poole testified that he agreed to and signed the note because it was what she wanted. There is no evidence that at the time the divorce decree was entered both parties intended for the obligations to provide for Ms. Poole's necessities from Mr. Poole's income nor any evidence for the Court to conclude that the agreement was intended to reduce any disparity in the parties' earning power. While it is true that any funds received by Ms. Poole would assist her with her debts and expenses, this is so with any payment awarded in a divorce decree.

As the Family Court was merely approving an agreement reached between the parties, there is no evidence of any intent on the part of the Family Court as to any of the three debts. That court made no specific findings relevant to this determination other than a finding that the agreement was fair and reasonable under the circumstances. As mentioned above, Mr. Poole was not represented by counsel at the final hearing and Ms. Poole was represented. Testimony indicated that he signed the agreement because it is what she wanted. Therefore, there is no evidence of any overreaching or bad faith as to the agreement on the part of Mr. Poole.

Weighing all of the factors after considering the evidence, the Court finds that the divorce decree includes an allocation of debt and property settlement only. While the result of the payments ordered in the divorce decree certainly would improve Ms. Poole's financial condition, there is insufficient evidence to indicate that the intent was to fashion an award of alimony, maintenance or support under any applicable law. Therefore, the Debtor has met his burden of proving that Ms. Poole's claims are properly treated for payment pursuant to § 1325.

### Conclusion

After considering the evidence and weighing all relevant factors, the Court cannot find that the three debts in question fall within the definition of a "domestic support obligation" and therefore they are not entitled to priority treatment pursuant to § 507(a)(1)(A). Therefore, Ms. Poole's objection to the plan on these grounds is overruled.

The Court has previously scheduled a continued confirmation hearing for October 18, 2007, to consider any other issue regarding confirmation of the plan.

**IT IS SO ORDERED.**